Justice BEASLEY dissenting.
The majority concludes that defendant had adequate notice of the alleged violations of probation, where the probation report contained a laundry list of "Other Violation[s]" and failed to designate a statutory condition under N.C.G.S. §§ 15A-1343(b)(1), 15A-1343(b)(3a), or 15A-1344(d2). The majority further holds that a probation violation report need only describe behavior to provide sufficient notice. This holding does not comport with Fourteenth Amendment Due Process or the Justice Reinvestment Act's changes to North Carolina's probation system because it does not require proper notice to a defendant that her probation may be revoked. Therefore, I respectfully dissent.
Due process under the Federal Constitution and our state statute requires notice to the defendant of the alleged violations against her before a hearing on probation revocation may take place. See **351 Morrissey v. Brewer , 408 U.S. 471, 486-87, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484, 497 (1972) ("[T]he parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged."); see also N.C.G.S. § 15A-1345(e) (2015) ("The State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged."). In Morrissey v. Brewer , two Iowa parolees had their parole revoked without the benefit of a hearing. 408 U.S. at 472-73, 92 S.Ct. at 2596, 33 L.Ed.2d at 489-90. The United States Supreme Court held in Morrissey that when the State attempts to curtail a parolee's constitutionally protected liberty interest by revoking parole, due process mandates certain procedural safeguards. See id. at 481-82, 92 S.Ct. at 2600, 33 L.Ed.2d at 495. Specifically, the Court said in Morrissey that
the liberty of a parolee, although indeterminate, includes many of the core values of *559 unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others.... By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.
Id. at 482, 92 S.Ct. at 2600, 33 L.Ed.2d at 495 (emphasis added).
While Morrissey addressed liberty interests of parolees facing parole revocation, in Gagnon v. Scarpelli the Court applied the same analysis to conclude that the liberty interests were synonymous for purposes of parole and probation, both requiring notice of the violations alleged against a defendant. Gagnon v. Scarpelli , 411 U.S. 778, 782, 786, 93 S.Ct. 1756, 1759-60, 1761-62, 36 L.Ed.2d 656, 664 (1973), superseded by statute , Parole Commission and Reorganization Act, Pub. L. No. 94-233, 90 Stat. 228 (1976). The Court in Gagnon clarified that probation revocation, like parole revocation "is not a stage of a criminal prosecution, but does result in a loss of liberty." Id. at 782, 93 S.Ct. at 1759-60, 36 L.Ed.2d at 662. Because a probationer risks the loss of liberty, she is entitled to notice of the asserted violations in compliance with the due process requirements of the Fourteenth Amendment. Id. at 786, 93 S.Ct. at 1761-62, 36 L.Ed.2d at 664.
The import of these cases is that the State must not only give the defendant written notice of the violation at issue but also provide a number of other due process protections, including:
(b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and **352 cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
Morrissey , 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 492. Importantly, Morrissey and Gagnon reject older concepts based on the tenet that because probation was only an "act of grace," a defendant had little recourse to contest the violations asserted against her. See e.g. , State v. Duncan , 270 N.C. 241, 246, 154 S.E.2d 53, 57 (1967) ("[P]robation or suspension of sentence is an act of grace and not of right[.]"). Definitively, the right to due process during probation proceedings is derived from the Fourteenth Amendment's liberty interest protections, and therefore, the right to proper notice cannot be so lightly dismissed.
The Justice Reinvestment Act of 2011 (JRA), in implementing a plan for criminal justice reform, mirrored the Court's rationale in Morrissey , which emphasized the importance probation plays in rehabilitation and reduction in costs of incarceration. See Morrissey , 408 U.S. at 477, 92 S.Ct. at 2598, 33 L.Ed.2d at 492. Part of the basis for the JRA was a report commissioned in 2009 by North Carolina state government officials. Council of State Gov'ts Justice Ctr., Justice Reinvestment in North Carolina 1 (Apr. 2011). The State asked the Council of State Governments Justice Center to provide data-driven analysis, that would produce recommendations for new policies designed to both improve public safety and reduce the costs of our corrections system. Id. A key finding of the report was that "[p]robation revocations accounted for greater than 50 percent of admissions to prison in FY 2009," id. at 2, which led the Council to recommend three priorities: "strengthen probation supervision, hold offenders accountable in more meaningful ways, and reduce the risk of reoffending," id. at 1.
Researchers struck a balance among these three priorities by stressing the importance of holding offenders accountable, while encouraging completion of probation programs through community-driven approaches. See id. at 3. One of the Council's recommendations for holding offenders accountable, which is at issue in this case, was to limit revocation to those defendants who have committed a new criminal offense or absconded from supervision. Id. at 15. The JRA implemented this recommendation, among others, and codified the requirement that "[t]he court may only revoke probation for a *560 violation of a condition **353 of probation under G.S. 15A-1343(b)(1)[1 ] or G.S. 15A-1343(b)(3a),[2 ] except as provided in G.S. 15A-1344(d2).[3 ] Imprisonment may be imposed pursuant to G.S. 15A-1344(d2) for a violation of a requirement other than G.S. 15A-1343(b)(1) or G.S. 15A-1343(b)(3a)." Justice Reinvestment Act of 2011, ch.192, sec. 4(b), 2011 N.C. Sess. Law 758, 767-68. Before the insertion of this language, any judge entitled to sit in the court that imposed probation could revoke it, with the exception of drug treatment probation[4] and unsupervised probation,[5] both of which had jurisdictional limits. See id.
The majority discusses the JRA's purpose, but fails to consider the changes it has made in North Carolina's probation procedures. While it is true that the JRA did not amend the specific provision relating to notice in N.C.G.S. § 15A-1345(e), the notice requirement cannot be read outside **354 the context of the remainder of the statutory framework for probation created by the JRA. Currently, N.C.G.S. § 15A-1345(e) requires that
[b]efore revoking or extending probation, the court must, unless the probationer waives the hearing, hold a hearing to determine whether to revoke or extend probation and must make findings to support the decision and a summary record of the proceedings. The State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged.
N.C.G.S. § 15A-1345(e) (emphasis added). However, as already explained, before the JRA was enacted a judge could revoke probation for virtually any violation, while after the JRA judges were limited to only three types of probation violations that could result in revocation (i.e., N.C.G.S. §§ 15A-1343(b)(1), 15A-1343(b)(3a), or 15A-1344(d2) ).
Therefore, post JRA, probation violations can result in revocable or nonrevocable consequences to a defendant. For example, nonrevocable consequences could include probation modification under N.C.G.S. § 15A-1344(d), holding a defendant in contempt under N.C.G.S. § 15A-1344(e1), or ordering a period of confinement under N.C.G.S. § 15A-1343(a1)(3). Additionally, some conditions of probation may fall into either category of revocable and nonrevocable violations. An illustration can be found in State v. Tindall , in which the defendant had a substance abuse *561 problem and was ordered to submit to substance abuse treatment. 227 N.C. App. 183, 184, 742 S.E.2d 272, 273 (2013). There "the violation reports alleged that defendant violated two conditions of her probation: to '[n]ot use, possess or control any illegal drug' and to 'participate in further evaluation, counseling, treatment or education programs recommended [ ] and comply with all further therapeutic requirements.' " Id. at 186, 742 S.E.2d at 275. The Court of Appeals correctly found that this description of the defendant's behavior, while providing notice generally that the defendant's conduct violated her probation, was not enough to support revocation of probation. Id. at 187, 742 S.E.2d at 275. The mere allegation that the defendant possessed or used a controlled substance was insufficient to put the defendant on proper notice of a potential revocation because the behavior could constitute a revocable violation (due to the nature of the conduct as a criminal offense) but could also be a technical violation triggering one of a host of nonrevocable consequences. See, e.g. , id. at 187, 742 S.E.2d at 275 ; see also N.C.G.S. § 15A-1343(b)(15) (2015) (requiring as a regular condition of probation that a defendant "[n]ot use, possess, or control any illegal drug or controlled substance"). **355 As defense counsel discussed at oral argument before this Court, the facts of this case provide another example in which allegations of behavior are insufficient to put a defendant on notice of the probation hearing's possible consequences. Here the probation officer's report included in the section labeled "Other Violation[s]" that defendant had the pending charge of "No Operators License," in violation of N.C.G.S. § 20-7(a) (2015) (requiring a license to operate a motor vehicle). However, operating a vehicle without a license can be either an infraction or a criminal misdemeanor. See N.C.G.S. § 20-35 (2015) (listing differing circumstances under which the offense of driving a motor vehicle without a driver's license is classified as a misdemeanor or an infraction). Therefore, the infraction relating to driving without an operator's license might result only in a modification of probation because the court may impose additional requirements, such as the defendant surrendering her driver's license, or defendant's probation could be subject to revocation for committing a criminal offense. Id. § 15A-1343(b)(1). Thus, only stating the defendant's behavior in the notice, without more specificity, does not always notify the defendant of the class of the offense or if the court plans to modify or revoke her probation.
Similarly, in State v. Cunningham , the Court of Appeals found error when the defendant was given notice only of probation violations upon which the trial court did not rely in its decision to revoke the defendant's probation. 63 N.C. App. 470, 475, 305 S.E.2d 193, 196 (1983). The alleged violation was that the defendant created a noise disturbance by playing loud music during late night hours. Id. at 474, 305 S.E.2d at 196. But, the trial court found defendant in violation of probation not for the noise disturbance but for trespassing and destroying his neighbor's property, offenses that were not included in his probation violation report and for which he did not have notice. Id. at 475, 305 S.E.2d at 196. As the Court of Appeals in Cunningham correctly held, only the allegations contained in the violation report can serve as notice to a defendant of conditions for which the trial court can consider revocation. Id. at 475, 305 S.E.2d at 196.
The majority's effort to define the word "violation" by using its dictionary definition and its belief that a description of the defendant's behavior is all that is legally required completely fails to reflect the specificity required for proper notice. Despite the majority's contention to the contrary, a statement describing "the specific behavior [d]efendant was alleged and found to have committed," State v. Hubbard , 198 N.C. App. 154, 159, 678 S.E.2d 390, 394 (2009), lacks the specificity sufficient to give notice to a defendant that her probation could be revoked at a **356 hearing. Constitutionally and statutorily, notice requires a description of the violation alleged. See Morrissey, 408 U.S. at 486-87, 92 S.Ct. at 2602-03, 33 L.Ed.2d at 497 ; see also N.C.G.S. § 15A-1345 (2015). Logically, to satisfy notice, the term "violation" also requires a specific description of the condition of probation violated (in this case N.C.G.S. § 15A-1343(b)(1) ) and not simply a description of the behavior that constituted the violation. If *562 the notice describes the defendant's behavior alone without reference to a probation condition violated, the defendant, before entering the hearing, would not know whether the State might seek to revoke her probation or impose some lesser consequence.[6] Describing only general types of behavior that may or may not fall under one of the three revocable conditions is insufficient because such an incomplete description permits the State to pick and choose when to proceed with revocation. Descriptions of general behavior only will cause a defendant to be ill-prepared for the hearing and do not "allow the defendant to prepare a defense and to protect the defendant from a second probation violation hearing for the same act." Hubbard , 198 N.C. App. at 158, 678 S.E.2d at 393 (citing State v. Russell , 282 N.C. 240, 243-44, 192 S.E.2d 294, 296 (1972) ).
The Supreme Court of the United States has ruled that probation implicates "core values of unqualified liberty and its termination inflicts a 'grievous loss,' " and thus the State may not impinge upon that constitutionally protected liberty interest without appropriate process. Morrissey , 408 U.S. at 482, 92 S.Ct. at 2600-01, 33 L.Ed.2d at 495. The majority ignores this mandate by failing to ensure that a defendant receives notice before her probation is revoked. Although I do not condone this defendant's alleged behavior,[7] the process required under the Fourteenth Amendment, for him as well as all other defendants is fundamental. As a result, I respectfully dissent.

As an aside, I note that the State did not seek discretionary review in either Tindall or Kornegay and has not questioned the correctness of any of the decisions that the Court has overruled in the brief that it filed with us in this case. Instead, the only issue debated in the parties' briefs was the extent to which the allegations contained in the violation notices at issue in this case satisfied the test enunciated in Tindall , Kornegay , and Lee .

The Court is, of course, correct in pointing out that the enactment of the Justice Reinvestment Act made no change to the notice requirement spelled out in N.C.G.S. § 15A-1345(e). On the other hand, the enactment of the Justice Reinvestment Act did substantially change the effect of particular probation violations. Prior to the enactment of the Justice Reinvestment Act, a probationer alleged to have violated any term or condition of probation knew that he or she was subject to having his or her probation revoked. The same is not true in the aftermath of the enactment of the Justice Reinvestment Act. As a result, additional allegations may, in some instances, be necessary before a probationer receives the same notice after the enactment of the Justice Reinvestment Act that he or she received prior to its enactment.

"(d2) Confinement in Response to Violation.-When a defendant under supervision for a felony conviction has violated a condition of probation other than G.S. 15A-1343(b)(1) or G.S. 15A-1343(b)(3a), the court may impose a period of confinement of 90 consecutive days to be served in the custody of the Division of Adult Correction of the Department of Public Safety. The court may not revoke probation unless the defendant has previously received a total of two periods of confinement under this subsection. A defendant may receive only two periods of confinement under this subsection. The 90-day term of confinement ordered under this subsection for a felony shall not be reduced by credit for time already served in the case. Any such credit shall instead be applied to the suspended sentence. However, if the time remaining on the maximum imposed sentence on a defendant under supervision for a felony conviction is 90 days or less, then the term of confinement is for the remaining period of the sentence. Confinement under this section shall be credited pursuant to G.S. 15-196.1." Id. § 15A-1344(d2) (2015).

"(a1) Authority to Supervise Probation in Drug Treatment Court.-Jurisdiction to supervise, modify, and revoke probation imposed in cases in which the offender is required to participate in a drug treatment court or a therapeutic court is as provided in G.S. 7A-272(e) and G.S. 7A-271(f). Proceedings to modify or revoke probation in these cases must be held in the county in which the drug treatment court or therapeutic court is located." Id. § 15A-1344(a1) (2015).

"(b) Limits on Jurisdiction to Alter or Revoke Unsupervised Probation.-If the sentencing judge has entered an order to limit jurisdiction to consider a sentence of unsupervised probation under G.S. 15A-1342(h), a sentence of unsupervised probation may be reduced, terminated, continued, extended, modified, or revoked only by the sentencing judge or, if the sentencing judge is no longer on the bench, by a presiding judge in the court where the defendant was sentenced." Id. § 15A-1344(b) (2015).

I also note that the majority's holding that a description of behavior alone is sufficient to provide notice goes far beyond the reasonable inference standard applied by the Court of Appeals below. Furthermore, the majority overrules a line of cases decided by the Court of Appeals that have correctly applied constitutional and statutory mandates since the passage of the JRA. See generally , State v. Lee , 232 N.C. App. 256, 753 S.E.2d 721 (2014) ; State v. Kornegay , 228 N.C. App. 320, 745 S.E.2d 880 (2013) ; State v. Tindall , 227 N.C. App. 183, 742 S.E.2d 272 (2013).

As the majority points out, defendant was also charged with first degree murder during the time defendant's hearing was continued.