STATE OF NORTH CAROLINA v. CARL LEWIS HUBBARD

No. COA08-1314

(Filed 7 July 2009)

**1. Probation and Parole— violation report—sufficient notice of violation**

A probation violation report gave defendant sufficient notice of the alleged violation pursuant to N.C.G.S. § 15A-1345(e). While the condition of probation which defendant allegedly violated might have been ambiguously stated, the report also set forth the specific facts that the State contended constituted the violation.

**2. Probation and Parole— violation—intensive supervision rules—findings**

The evidence was sufficient to support the trial court's findings made in support of revoking defendant's probation where the violation alleged that defendant failed to report in a reasonable manner during a curfew check and the court interpreted this to mean that defendant violated a condition of the intensive probation program by being drunk and disruptive.

Appeal by Defendant from judgment entered 8 August 2008 by Judge Catherine C. Eagles in Forsyth County Superior Court. Heard in the Court of Appeals 26 March 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Floyd M. Lewis, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for Defendant.*

STEPHENS, Judge.

*I. Procedural History and Factual Background*

On 16 April 2008, Defendant Carl Lewis Hubbard pled guilty to possession of a firearm by a felon. The Honorable Edwin G. Wilson, Jr. sentenced Defendant to a prison term of 16 to 20 months, suspended the sentence, and placed Defendant on supervised probation for 36 months, including six months intensive probation. The Regular Conditions of Defendant's probation included the following:

(6) Report as directed by the Court or the probation officer to the officer at reasonable times and places and in reasonable manner, permit the officer to visit at reasonable times, answer all reasonable inquiries by the officer and obtain prior approval from the officer for, and notify the officer of, any change in address or employment.

. . . .

21. Comply with the Special Conditions of Probation-Intermediate Punishments . . . .

The Special Conditions of Probation-Intermediate Punishments included the following:

4. Intensive Supervision Program . . . . Submit to supervision by officers assigned to the Intensive Probation Program . . . for a period of 6 months . . . and comply with the rules adopted by that program.

On 27 June 2008, Defendant's Probation Officer Ricky Wallace filed a probation violation report alleging that Defendant had violated a condition of Defendant's probation. The report alleged:

Of the conditions of probation imposed . . . [D]efendant has willfully violated:

1. Other Violation

S.O Michael Horn went to residence on 06/23/08 at 7:50 PM to check [Defendant's] curfew. The [Defendant] was home but he was so drunk that he could hardly walk. Officer Horn told this [Defendant] to stop drinking and go to bed. Officer Horn returned at 8:20 PM and [Defendant's] girlfriend was outside because she was scared to go back into [the] residence and [Defendant] was still drinking and raising cain. Officer Horn took [Defendant] into custody for his safety [and] the safety of his girlfriend and small child. This [Defendant] failed to report in a reasonable manner to his probation officer during a curfew check.

At the probation violation hearing, Officer Michael Vance Horn, an intensive surveillance officer with the North Carolina Department of Correction, testified that a curfew was imposed on Defendant as part of Defendant's intensive supervision program and that Horn was responsible for conducting curfew checks on Defendant. Horn further testified that during Horn's first visit with Defendant, Horn

explained that compliance with curfew meant that Defendant had to be in his home between the hours of 6:00 p.m. and 6:00 a.m., and

[i]n regards to his personal conduct, I told him that as long as he drank—if he drank one beer there would be no problem. If he was intoxicated and he put—my safety felt endangered that he would be [cited for a probation violation] right then.

Horn testified further as follows: on 23 June 2008, at approximately 7:50 p.m., Horn went to Defendant's residence to conduct a curfew check. Horn found Defendant at home but "highly intoxicated." Horn testified that he "explained to [Defendant] that he needed to quit drinking at that point . . . and to go to bed[.]" At 8:15 p.m., Horn received a phone call from Defendant's girlfriend advising Horn that Defendant was in his front yard "yelling, carrying on." At approximately 8:20 p.m., Horn returned to Defendant's residence and observed Defendant entering his home. Horn went to Defendant's door and asked Defendant "what he was still doing up, that he had had plenty of time to go lay down." Horn testified that Defendant "commenced to start yelling." Horn told Defendant it was not necessary to yell, but Defendant "kept yelling and cursing different things[.]" Horn then placed Defendant under arrest for violating Defendant's probation.

When asked which condition of probation Defendant had violated, Horn responded,

[i]t will be number 13, submit at a reasonable time to warrantless searches, that's warrantless searches; number 6, I believe. I can't find it right here, I'm trying to read.

The trial court then interjected, "I took it to be the intensive term?" Horn responded, "Yes, ma'am, part of the intensive supervision." Horn then testified, "[i]t says in number—the intensive supervision submit to a supervising officer, sign intensive program and down here 6 to 9 months . . . [a]nd that would be at a reasonable time and a reasonable manner." When asked by defense counsel if Horn could read that condition specifically, verbatim, Horn explained that it was "[Officer] Wallace's responsibility and not mine" to determine which condition Defendant had violated. Horn was able to testify that Defendant's probation did not prohibit Defendant from possessing or consuming alcohol.

As Defendant's probation officer, Wallace was responsible for supervising Defendant's compliance with the terms and conditions of

STATE v. HUBBARD

[198 N.C. App. 154 (2009)]

Defendant's probation. Wallace testified that the single violation he assigned to Defendant based upon Wallace's supervision of Defendant was

> regular condition number 6, that the Defendant report as directed by the Court or the probation officer to the officer at reasonable times, reasonable places[,] and in a reasonable [manner].

Wallace further testified that curfew is an ordinary condition of intensive probation, and that surveillance officers conduct curfew checks twice a week. Additionally, Wallace would visit Defendant once a month at Defendant's residence, and Defendant would report to Wallace's office once a month. Wallace testified that he had also explained to Defendant that "part of his intensive supervision is that . . . he's not at home drunk."

At the conclusion of the arguments, the trial court announced:

> After hearing the evidence I'm satisfied in the exercise of my discretion that the Defendant did violate the terms and conditions of his probation, specifically that he failed to comply with the condition of his probation that he submit to supervision by officers of the intensive probation program and comply with the rules adopted by that program.

After making oral findings regarding Defendant's failure to comply with the rules of Defendant's intensive probation, the trial court stated, "I don't know that I even have to read whether it was a violation of the terms of his regular probation."

On that same day, the trial court entered judgment and commitment upon revocation of probation, finding: "The condition(s) violated and the facts of each violation are as set forth . . . in paragraph(s) 1 in the Violation Report . . . dated 06/27/08." The judgment and commitment revoked Defendant's probation and activated his suspended sentence. From this judgment and commitment, Defendant appeals.

## II. Discussion

[1] We first address Defendant's argument that the trial court lacked subject matter jurisdiction to enter judgment and commitment revoking Defendant's probation for the violation of a condition of probation of which Defendant had no notice.

Before revoking or extending a defendant's probation, "[t]he State must give the [defendant] notice of the [probation violation]

hearing and its purpose, including a statement of the violations alleged." N.C. Gen. Stat. § 15A-1345(e) (2007). The purpose of the notice mandated by this section is to allow the defendant to prepare a defense and to protect the defendant from a second probation violation hearing for the same act. *See, e.g., State v. Russell*, 282 N.C. 240, 243-44, 192 S.E.2d 294, 296 (1972) (explaining that the purpose of an indictment in a criminal case is to put the defendant on notice of the charges against him so that he may prepare a defense and be protected from a second prosecution for the same act). Relying on *State v. Cunningham*, 63 N.C. App. 470, 305 S.E.2d 193 (1983), Defendant contends that he did not have sufficient notice of the alleged violation for which Defendant's probation was ultimately revoked. Defendant's argument is without merit.

In *Cunningham*, the probation violation report served upon defendant alleged that defendant had played loud music disturbing his neighbors and removed property signs posted by defendant's neighbors, in violation of the good behavior condition of defendant's probation. *Id.* at 475, 305 S.E.2d at 196. However, at the revocation hearing, the State sought to prove additional conduct not contained in the report—that defendant trespassed upon and damaged real and personal property belonging to defendant's neighbors. The trial court revoked defendant's probation for defendant's playing loud music as well as for defendant's trespass and damage to property. *Id.* This Court reversed the probation revocation based on defendant's trespass and damage to property because "[t]he record does not show that defendant received notice or a statement of an alleged violation consisting of trespass or damage to property." *Id.*

Here, the probation violation report alleged that Defendant "failed to report in a reasonable manner to his probation officer during a curfew check." Wallace testified that this language referred to Regular Condition number six in that Defendant failed to "report as directed by the Court or the probation officer to the officer at reasonable times, reasonable places[,] and in reasonable [manner]." The trial court interpreted the language to mean that Defendant "failed to . . . submit to supervision by officers of the intensive probation program and comply with the rules adopted by that program[,]" in violation of Special Condition number four. However, while the condition of probation which Defendant allegedly violated might have been ambiguously stated in the report, the report also set forth the specific facts that the State contended constituted the violation:

S.O Michael Horn went to residence on 06/23/08 at 7:50 PM to check [Defendant's] curfew. The [Defendant] was home but he was so drunk that he could hardly walk. Officer Horn told this [Defendant] to stop drinking and go to bed. Officer Horn returned at 8:20 PM and [Defendant's] girlfriend was outside because she was scared to go back into [the] residence and [Defendant] was still drinking and raising cain.

Unlike *Cunningham*, the evidence at the revocation hearing established these same facts. Based on this evidence, the trial court found as fact the allegations contained in the report and, therefore, revoked Defendant's probation. Thus, in contrast to *Cunningham*, Defendant received notice of the specific behavior Defendant was alleged and found to have committed in violation of Defendant's probation. We thus conclude that the probation violation report served upon Defendant gave Defendant sufficient notice of the alleged violation pursuant to N.C. Gen. Stat. § 15A-1345(e). Accordingly, the assignments of error upon which Defendant's argument is based are overruled.

**[2]** Defendant next argues that the trial court erred in revoking Defendant's probation as the State presented insufficient evidence that Defendant violated the condition set forth in the violation report. We disagree.

A trial court may revoke a defendant's probation where the evidence is sufficient to "reasonably satisfy the [trial court] in the exercise of [its] sound discretion that the defendant has willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended." *State v. Hewett*, 270 N.C. 348, 353, 154 S.E.2d 476, 480 (1967). "Findings made in support of revoking probation must be supported by competent evidence . . . ." *State v. Sherrod*, 191 N.C. App. 776, 777, 663 S.E.2d 470, 472 (2008). A trial court's judgment revoking a defendant's probation will be disturbed only upon a showing of a manifest abuse of discretion. *State v. Guffey*, 253 N.C. 43, 45, 116 S.E.2d 148, 150 (1960).

As stated *supra*, the probation violation report alleged that Defendant "failed to report in a reasonable manner to his probation officer during a curfew check." The trial court interpreted this allegation to mean that Defendant violated Special Condition number four, and the trial court found specifically that Defendant failed "to comply with the rules of the intensive probation program."

In support of this finding, the trial court announced:

The officers testified, and I find it to be completely credible, that they informed [Defendant] of the curfews [sic]; that they told him they had to be able to communicate with him and talk to him during those curfews, that seems quite reasonable to me; nothing unreasonable about that requirement.

It's also, I think, of note that they didn't arrest him for violating his probation the first time they went out there. They waited until he continued to be disruptive and failed to follow their instructions about not disrupting things at his home, and when the officer went back out there he cursed at them and threatened them.

The trial court's written order found as fact the allegation contained in the violation report:

S.O Michael Horn went to residence on 06/23/08 at 7:50 PM to check [Defendant's] curfew. The [Defendant] was home but he was so drunk that he could hardly walk. Officer Horn told this [Defendant] to stop drinking and go to bed. Officer Horn returned at 8:20 PM and [Defendant's] girlfriend was outside because she was scared to go back into [the] residence and [Defendant] was still drinking and raising cain. Officer Horn took [Defendant] into custody for his safety [and] the safety of his girlfriend and small child.

Horn testified that he advised Defendant that Defendant "needed to be home between the hours of . . . 6:00 p.m. and 6:00 a.m." He also told Defendant that "[i]f [Defendant] was intoxicated and he put—my safety felt endangered that he would be subject to being violated right then."

Wallace testified that a curfew is a normal condition of intensive probation and that Wallace "talked [to Defendant] about him drinking and him not drinking; him being on intensive probation, and part of his intensive supervision is that, just like Mr. Horn explained, he's not at home drunk."

Horn testified that when he visited Defendant the first time on the evening in question, Defendant "was highly intoxicated. His girlfriend and small child . . . was [sic] actually standing outside. When I got out of the car she advised that she was scared to go in . . . and that [Defendant] was highly intoxicated." When Horn returned later that evening, Defendant's girlfriend and child were across the street as the

girlfriend was "scared to come back into the residence." Defendant's condition had worsened and Defendant "kept yelling and cursing different things, and at that time [Horn] placed [Defendant] under arrest for a probation violation." When the prosecutor asked Horn, "Did you feel like at that time that your safety was compromised in the discharge of your duties with respect to this Defendant?", Horn responded, "Yes, I did. I felt like it could escalate into a violent confrontation considering what crime that he was on probation for."

We conclude that this evidence is sufficient to support the trial court's findings made in support of revoking Defendant's probation. Although Defendant argues that the State failed to offer the rules adopted by the Intensive Supervision Program into evidence, and did not produce evidence that not being intoxicated was a rule of intensive supervision, both Horn and Wallace testified that compliance with Defendant's curfew, part of the Intensive Supervision Program, meant that Defendant could not be drunk in his home. Defendant failed to object to this testimony or to offer any evidence to the contrary.

We hold that the trial court did not abuse its discretion in revoking Defendant's probation and activating Defendant's suspended sentence.

AFFIRMED.

Judges JACKSON and STROUD concur.