IN THE SUPREME COURT OF NORTH CAROLINA

No. 22A17

Filed 8 December 2017

STATE OF NORTH CAROLINA

v.

PIERRE JE BRON MOORE

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 795 S.E.2d 598 (2016), finding no error after appeal from judgments entered on 15 January 2016 by Judge R. Allen Baddour in Superior Court, Orange County. Heard in the Supreme Court on 11 October 2017.

*Joshua H. Stein, Attorney General, by Jessica V. Sutton and Teresa M. Postell, Assistant Attorneys General, for the State.*

*Allegra Collins for defendant-appellant.*

MARTIN, Chief Justice.

Defendant was convicted of committing four crimes over a two-month period. He received two suspended sentences and was placed on probation. His probation was revoked after he was charged with committing additional crimes. We now consider whether defendant received adequate notice of his probation revocation hearing pursuant to N.C.G.S. § 15A-1345(e). We modify and affirm the decision of the Court of Appeals and uphold the revocation of defendant's probation.

In August 2012, defendant was arrested for and charged with breaking and entering and larceny after breaking and entering. Defendant was released on bond and then, in September 2012, was arrested for and charged with committing those same offenses again. Defendant pleaded guilty to the August crimes and entered an *Alford* plea for the September crimes. Defendant received a suspended sentence of eight to nineteen months and supervised probation for twenty-four months for the August crimes. He received a suspended sentence of six to seventeen months and supervised probation for twenty-four months for the September crimes. The punishments for these crimes were to run consecutively. The judgments in both instances listed many of the "regular conditions of probation" under N.C.G.S. § 15A-1343(b). The listed conditions included that "defendant shall . . . [c]ommit no criminal offense in any jurisdiction," consistent with the language of N.C.G.S. § 15A-1343(b)(1).

Defendant's probation for the September crimes was modified and extended a number of times due to violations of probation conditions. On 3 June 2015, the State filed two probation violation reports relating to defendant's probation for the August and September 2012 crimes, respectively. The reports alleged violations of monetary conditions of probation. Each report also alleged an "Other Violation" that listed various pending criminal charges. Specifically, under "Other Violation" the reports each stated the same thing:

> The defendant has the following pending charges in

> Orange County. 15CR 051315 No Operators License 6/8/15, 15CR 51309 Flee/Elude Arrest w/MV 6/8/15. 13CR 709525 No Operators License 6/15/15, 14CR 052225 Possess Drug Paraphernalia 6/16/15, 14CR 052224 Resisting Public Officer 6/16/15, 14CR706236 No Motorcycle Endorsement 6/29/15, 14CR 706235 Cover Reg Sticker/Plate 6/29/15, and 14CR 706234 Reg Card Address Change Violation.

(Original in all uppercase.)

In January 2016, after many months of continuances, the trial court held a hearing on these violation reports.[1] Defendant's probation officer testified about the new offenses alleged in the reports, and two police officers testified about defendant's fleeing to elude arrest two different times. The trial court found that defendant had violated the condition of probation to commit no criminal offense, and specifically found that defendant had "committed the charges of" fleeing to elude arrest and of not having an operator's license. The trial court accordingly revoked defendant's probation and activated the suspended sentences for defendant's August and September 2012 crimes, to be served consecutively.

Defendant appealed to the Court of Appeals, claiming that the probation violation reports did not give him adequate notice because they did not specifically state the condition of probation that he allegedly violated. In a divided opinion, the Court of Appeals affirmed the trial court's judgments. *State v. Moore*, ___ N.C. App.

---

[1] During the time period covered by the continuances, defendant was also charged with first-degree murder.

___, ___, 795 S.E.2d 598, 600 (2016). The Court of Appeals concluded that the notice was adequate—that there was "no ambiguity"—because the allegations in the violation reports could point only to the revocation-eligible violation of the condition to commit no new criminal offense. *Id.* at ___, 795 S.E.2d at 600. Defendant appealed to this Court based on the dissenting opinion in the Court of Appeals.

Before revoking a defendant's probation, a trial court must conduct a hearing to determine whether the defendant's probation should be revoked, unless the defendant waives the hearing. N.C.G.S. § 15A-1345(e) (2015). "The State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged." *Id.* Probation can be revoked only if a defendant (1) commits a criminal offense in any jurisdiction in violation of N.C.G.S. § 15A-1343(b)(1); (2) absconds from supervision in violation of N.C.G.S. § 15A-1343(b)(3a); or (3) has already served two periods of confinement for violating other conditions of probation according to N.C.G.S. § 15A-1344(d2). *Id.* § 15A-1344(a) (2015). Only the first of these statutorily-enumerated instances—the commission of a criminal offense—is at issue here.

Defendant argues that, because the probation violation reports did not specifically list the "commit no criminal offense" condition as the condition violated, the reports did not provide the notice that subsection 15A-1345(e) requires. We must address whether these reports complied with the statute's notice requirement. To do

that, we need to examine what exactly that statutory provision means. This is a matter of first impression for this Court.

"In resolving issues of statutory construction, this Court must first ascertain legislative intent to assure that both the purpose and the intent of the legislation are carried out. In undertaking this task, we look first to the language of the statute itself." *Poole v. Miller*, 342 N.C. 349, 351, 464 S.E.2d 409, 410 (1995) (citation omitted). "[O]rdinarily words of a statute will be given their natural, approved, and recognized meaning." *Victory Cab Co. v. City of Charlotte*, 234 N.C. 572, 576, 68 S.E.2d 433, 436 (1951).

Subsection 15A-1345(e) provides that "[t]he State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged." Neither the term "violation" nor the term "violations," as used in the statutory framework of which subsection 15A-1345(e) is a part, are defined by statute. *Black's Law Dictionary* defines "violation" as "1. An infraction or breach of the law; a transgression. . . . 2. The act of breaking or dishonoring the law; the contravention of a right or duty." *Violation, Black's Law Dictionary* (10th ed. 2014). Similarly, *Merriam-Webster's Collegiate Dictionary* defines "violation" as "the act of violating" and indicates in its definition of "violate" that "violating" means "break[ing]" or "disregard[ing]." *Merriam-Webster's Collegiate Dictionary* 1396 (11th ed. 2007). These definitions show that a violation is an action that violates some rule or law; a violation is not the underlying rule or law that was violated. In section 15A-1345,

and hence in subsection 15A-1345(e), the words "violation" and "violations" refer to violations of conditions of probation. *See, e.g.*, N.C.G.S. § 15A-1345(a) (2015) (discussing when "[a] probationer is subject to arrest for violation of conditions of probation"). It follows that the phrase "a statement of the violations alleged" refers to a statement of what a probationer *did* to violate his conditions of probation. It does not require a statement of the underlying conditions that were violated.

"[I]n effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used." *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014). Defendant would have us insert a requirement into the statute that simply is not there: one that requires the State to provide notice of the specific condition of probation that defendant allegedly violated. This approach would effectively add words to the statute so that the statute would read "a statement of the violations alleged *and the conditions of probation allegedly violated.*" But the statute as it actually reads, without the italicized words, requires only a statement of the actions that violated the conditions, not of the conditions that those actions violated.

Our straightforward interpretation is further supported by looking at the use of the word "violation" in N.C.G.S. § 15A-1344(a). This provision appears in the statute that directly precedes the statute in which subsection 15A-1345(e) appears and is part of the same statutory framework regarding probation. Subsection 15A-1344(a) pertains to the authority of trial courts to modify or revoke probation.

In discussing when a court can revoke probation, the provision states that "[t]he court may only revoke probation for a violation *of a condition of probation* under" certain specified provisions. N.C.G.S. § 15A-1344(a) (emphasis added). So the word "violation" cannot be synonymous with the phrase "condition of probation," because subsection 15A-1344(a) uses "condition of probation" to *modify* "violation." And that makes sense, because the phrase "condition of probation" is describing what was violated rather than the action that constituted the violation.

This interpretation is also consistent with the notice provision's purpose. Just as with the notice provided by criminal indictments, *see, e.g.*, *State v. Russell*, 282 N.C. 240, 243-44, 192 S.E.2d 294, 296 (1972), "[t]he purpose of the notice mandated by [N.C.G.S. § 15A-1345(e)] is to allow the defendant to prepare a defense and to protect the defendant from a second probation violation hearing for the same act," *State v. Hubbard*, 198 N.C. App. 154, 158, 678 S.E.2d 390, 393 (2009) (citing *Russell*, 282 N.C. at 243-44, 192 S.E.2d at 296). A statement of a defendant's alleged actions that constitute the alleged violation will give that defendant the chance to prepare a defense because he will know what he is accused of doing. He will also be able to determine the possible effects on his probation that those allegations could have, and he will be able to gather any evidence available to rebut the allegations. Our interpretation is therefore consistent with both the language of the statute and its purpose.

The Court of Appeals in this case based its holding on, and the parties primarily argue over, a line of cases with which we disagree. Before the Justice Reinvestment Act (JRA) was enacted in 2011, the Court of Appeals correctly interpreted subsection 15A-1345(e) in *State v. Hubbard*, 198 N.C. App. 154, 678 S.E.2d 390 (2009). In *Hubbard*, the Court of Appeals held that the State had complied with the notice requirement because, "while the condition of probation which Defendant allegedly violated might have been ambiguously stated in the [violation] report, the report also set forth the specific facts that the State contended constituted the violation." *Id.* at 158, 678 S.E.2d at 394. "Defendant received notice of the specific behavior Defendant was alleged and found to have committed in violation of Defendant's probation." *Id.* at 159, 678 S.E.2d at 394. In other words, notice of the factual allegations—the specific behavior—that constituted the violation was enough.

After the JRA was passed, however, the Court of Appeals began imposing an additional notice requirement that is not found in the text of subsection 15A-1345(e). Starting with *State v. Tindall*, 227 N.C. App. 183, 742 S.E.2d 272 (2013), the Court of Appeals began requiring that, when the State seeks to revoke a defendant's probation at a revocation hearing, the notice of the hearing provided by the State must indicate the revocation-eligible condition of probation that the defendant has allegedly violated. *See id.* at 187, 742 S.E.2d at 275. The Court of Appeals noted in *Tindall* that the JRA changed the law by making only some of the conditions of probation revocation-eligible instead of all of them. *Id.* at 185, 742 S.E.2d at 274; *see*

*also* Justice Reinvestment Act of 2011, ch. 192, sec. 4(b), 2011 N.C. Sess. Laws 758, 767-68 (amending N.C.G.S. § 15A-1344(a)). The Court of Appeals then concluded that *Hubbard* did not apply because it was decided before the JRA changed the law. *Tindall*, 227 N.C. App. at 187, 742 S.E.2d at 275. The Court of Appeals reasoned that, after the JRA, a probationer needs to "receive[ ] notice that the alleged violation was the type of violation that could potentially result in a revocation of her probation." *Id.* at 187, 742 S.E.2d at 275.

In *State v. Kornegay*, 228 N.C. App. 320, 745 S.E.2d 880 (2013), the Court of Appeals recognized that it was bound by *Tindall* and applied that decision. *See id.* at 323, 745 S.E.2d at 883. The Court of Appeals stated that, in order "[t]o establish jurisdiction over specific allegations in a probation revocation hearing, the defendant either must waive notice or be given proper notice of the revocation hearing, *including the specific grounds on which his probation might be revoked.*" *Id.* at 324, 745 S.E.2d at 883 (emphasis added). The Court of Appeals later applied the *Tindall* and *Kornegay* line of cases in *State v. Lee*, 232 N.C. App. 256, 753 S.E.2d 721 (2014).

But the JRA did not change the notice requirements for probation revocation hearings. So, to the extent that *Tindall*, *Kornegay*, and *Lee* created a new notice requirement not found in the text of subsection 15A-1345(e), they are overruled.

It is true that, before the JRA was enacted in 2011, trial courts had authority to revoke probation for a violation of any probation condition. *See* N.C.G.S. § 15A-1344 (2010). After the JRA, by contrast, only violations of any of the three conditions

specified in N.C.G.S. § 15A-1344(a) are revocation-eligible. Yet the purpose of the JRA had nothing to do with heightened notice requirements for revocation hearings. The JRA's purpose was "to reduce prison populations and spending on corrections and then to reinvest the savings in community-based programs." James M. Markham, *The North Carolina Justice Reinvestment Act* 1 (2012). Before the JRA was enacted, over half of the individuals entering North Carolina prisons were doing so because of violations of conditions of probation. *Id.* at 2. In fiscal year 2009, moreover, three-quarters of these individuals were entering "for violations of supervision conditions, not the result of a new conviction or absconding." Council of State Gov'ts Justice Ctr., *Justice Reinvestment in North Carolina: Three Years Later* 3 (Nov. 2014). The changes to the law that the JRA effected were consistent with these concerns because subsection 15A-1344(a), as amended by the JRA, now makes only committing a new criminal offense or absconding revocation-eligible unless a defendant has already served two periods of confinement for violating other conditions of probation. *See* Ch. 192, sec. 4(b), N.C. Sess. Laws at 767-68. The decrease in revocation-eligible conditions—that is, the decrease in conditions whose violation would land a probationer back in prison—would have the natural effect of reducing the prison population.

Even more fundamental than purpose, of course, is text. As we have discussed, the phrase "a statement of the violations alleged" in subsection 15A-1345(e)'s notice requirement has a straightforward meaning when each of the words in that phrase

is "given [its] natural, approved, and recognized meaning." *Victory Cab Co.*, 234 N.C. at 576, 68 S.E.2d at 436. And the JRA did not change the text of this phrase, *compare* Act of June 23, 1977, ch. 711, sec. 1, 1977 N.C. Sess. Laws 853, 870-71 (captioned "An Act to Amend the Laws Relating to Criminal Procedure"), *with* N.C.G.S. § 15A-1345(e) (2015), so it did not change the phrase's meaning. That should not be surprising, because keeping the notice requirement as-is comports with the JRA's purpose. Just as reducing the number of substantive crimes could reduce the prison population without any change in indictment requirements, reducing the number of revocation-eligible conditions of probation can reduce the prison population without any change in notice requirements.

Turning to the specifics of this case, the State sought to prove that defendant had violated the condition that he commit no criminal offense. As we have seen, subsection 15A-1345(e) required the State to give defendant notice of his probation revocation hearing that "includ[ed] a statement of the violations alleged." This means that the notice needed to contain a statement of the actions defendant allegedly took that constituted a violation of a condition of probation—that is, a statement of what defendant allegedly *did* that violated a probation condition. Here the alleged violation was the act of committing a criminal offense. Defendant therefore needed to receive a statement of the criminal offense or offenses that he allegedly committed.

The violation reports in this case stated that "the defendant has the following pending charges in Orange County," and then went on to list, among other things,

the names of the specific offenses and the criminal case file numbers. While incurring criminal charges is not a violation of a probation condition, criminal charges are alleged criminal offenses. And committing a criminal offense is a violation of a probation condition. A statement of pending criminal charges, then, is a statement of alleged violations. The information in the violation reports therefore constituted "a statement of the violations alleged" because it notified defendant of the actions he allegedly took that violated a probation condition.[2] As the Court of Appeals stated in *Hubbard,* "[d]efendant received notice of the specific behavior [d]efendant was alleged and found to have committed in violation of [his] probation." 198 N.C. App. at 159, 678 S.E.2d at 394. That is all that is required under subsection 15A-1345(e).

Both the concurring opinion and the dissenting opinion in this case suggest that our interpretation of subsection 15A-1345(e) could result in due process violations. The dissent appears to take that analysis even further and finds that defendant's due process rights were violated in this case. But defendant appealed this case to this Court based solely on a dissent in the Court of Appeals, and neither party petitioned for discretionary review of additional issues. Our review is therefore limited to the issue or issues "specifically set out in the dissenting opinion as the basis for that dissent." N.C. R. App. P. 16(b). In this case, the basis for the dissent in the

---

[2] We do not hold that a probation violation report must necessarily contain all of the information that these violation reports included in order to constitute "a statement of the violations alleged." We hold only that the information in these reports was enough.

Court of Appeals was only that the majority had not properly applied subsection 15A-1345(e). *See Moore*, ___ N.C. App. at ___, 795 S.E.2d at 600-02 (Hunter, Jr., J., dissenting). The Court of Appeals dissent said nothing at all about due process or the Fourteenth Amendment. *See generally id.* As a result, there is no constitutional issue before us. This case is simply about statutory interpretation.

The "statement of the violations alleged" requirement in N.C.G.S. § 15A-1345(e) is satisfied by a statement of the actions that a defendant has allegedly taken that constitute a violation of a condition of probation. We therefore modify the Court of Appeals' decision to the extent that it holds otherwise. In this case, the probation violation reports included a list of the criminal offenses that defendant allegedly committed. That list provided a statement of alleged acts by defendant that, if proved, would violate a probation condition, as required by subsection 15A-1345(e). Accordingly, we modify and affirm the decision of the Court of Appeals and uphold the trial court's revocation of defendant's probation.

MODIFIED AND AFFIRMED.


Justice ERVIN, concurring, in part, and concurring in the result, in part.

In this case, the Court holds that the trial court had jurisdiction to revoke defendant's probation because "the probation violation reports included a list of the criminal offenses that defendant allegedly committed" and "[t]hat list provided a

statement of defendant's alleged acts that violated a probation condition, as required by subsection 15A-1345(e)." In reaching this conclusion, the Court has overruled the Court of Appeals' decisions in *State v. Lee*, 232 N.C. App. 256, 753 S.E.2d 721 (2014); *State v. Kornegay*, 228 N.C. App. 320, 745 S.E.2d 880; and *State v. Tindall*, 227 N.C. App. 183, 742 S.E.2d 272 (2013), on the grounds that the State is not required to give probationers "notice of the particular revocation-eligible violation," *Lee*, 232 N.C. App. at 260, 753 S.E.2d at 723 (2014), and that a statement of the probationer's alleged conduct is all that is required to support a trial court's revocation decision. Although I fully concur in the Court's decision to uphold the revocation of defendant's probation, I cannot agree with all of the reasoning in which the Court has engaged in order to reach that result or with its decision to overrule the Court of Appeals' decisions in *Tindall*, *Kornegay*, and *Lee*.[1]

As the majority notes, "[a]fter the [Justice Reinvestment Act] was passed" "only some of the conditions of probation [became] revocation-eligible instead of all of them." *See Tindall*, 227 N.C. App. at 185, 742 S.E.2d at 274. More specifically, following the enactment of the Justice Reinvestment Act, a trial court was only entitled to revoke a defendant's probation in the event that the defendant has (1) committed a criminal offense; (2) absconded supervision; or (3) served two periods of

---

[1] As an aside, I note that the State did not seek discretionary review in either *Tindall* or *Kornegay* and has not questioned the correctness of any of the decisions that the Court has overruled in the brief that it filed with us in this case. Instead, the only issue debated in the parties' briefs was the extent to which the allegations contained in the violation notices at issue in this case satisfied the test enunciated in *Tindall*, *Kornegay*, and *Lee*.

confinement in response to violation of other conditions of probation. N.C.G.S. § 15A-1344(a) (2015).

> Before revoking or extending probation, the court must, . . . hold a hearing to determine whether to revoke or extend probation and must make findings to support the decision and a summary record of the proceedings. The State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged.

*Id.* § 15A-1345(e) (2015). The ultimate issue before the Court in this case is the meaning of the statutory requirement that the probationer receive "a statement of the violations alleged" before a trial court can revoke his or her probation.

"A probation revocation proceeding is not a formal criminal prosecution, and probationers thus have 'more limited due process right[s].' " *State v. Murchison*, 367 N.C. 461, 464, 758 S.E.2d 356, 358 (2014) (alteration in original) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 789, 93 S. Ct. 1756, 1763, 36 L. Ed. 2d 656, 666 (1973), *superseded by statute*, Parole Commission and Reorganization Act, Pub. L. No. 94-233, 90 Stat. 228 (1976)). As a matter of due process, however,

> [t]he probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation.

*Black v. Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254, 2258, 85 L. Ed. 2d 636, 642-43 (1985) (citing *Gagnon*, 411 U.S. at 786, 93 S. Ct. at 1761, 36 L. Ed. 2d at 664). The

General Assembly has effectuated this notice-related due process requirement by enacting N.C.G.S. § 15A-1345(e), the proper construction of which is the only issue that is before us in this case.

As should be obvious, "[t]he purpose of the notice mandated by this section is to allow the defendant to prepare a defense and to protect the defendant from a second probation violation hearing for the same act." *State v. Hubbard*, 198 N.C. App. 154, 158, 678 S.E.2d 390, 393 (2009) (citation omitted). For that reason, I am inclined to believe that the notice required by N.C.G.S. § 15A-1345(e) must adequately inform the probationer of the condition that he or she is alleged to have violated, given that, following the enactment of the Justice Reinvestment Act,[2] violations of certain conditions of probation justify revocation while violations of other conditions of probation do not. I am frankly at a loss to see how a probationer can adequately prepare a defense in the event that he or she cannot determine the consequences to

---

[2] The Court is, of course, correct in pointing out that the enactment of the Justice Reinvestment Act made no change to the notice requirement spelled out in N.C.G.S. § 15A-1345(e). On the other hand, the enactment of the Justice Reinvestment Act did substantially change the effect of particular probation violations. Prior to the enactment of the Justice Reinvestment Act, a probationer alleged to have violated any term or condition of probation knew that he or she was subject to having his or her probation revoked. The same is not true in the aftermath of the enactment of the Justice Reinvestment Act. As a result, additional allegations may, in some instances, be necessary before a probationer receives the same notice after the enactment of the Justice Reinvestment Act that he or she received prior to its enactment.

the continued existence of his "conditional liberty" that might flow from a determination in the State's favor.[3]

According to the Court, the statutory reference to "a statement of the violations alleged" contained in N.C.G.S. § 15A-1345(e) "requires only a statement of the actions that violated the conditions, not of the conditions that those actions violated," with this determination being predicated, at least in part, on the understanding that "the word 'violation' cannot be synonymous with the phrase 'condition of probation,' because subsection 15A-1344(a) uses 'condition of probation' to *modify* 'violation.' " After examining the plain language of N.C.G.S. § 15A-1345(e), I am inclined to refrain from parsing the relevant statutory language that finely. Instead of being limited solely to a statement of conduct, it seems to me that the statutory reference to "a statement of the violations alleged," when read as a unified whole, necessarily refers to both the specific conduct in which a defendant allegedly engaged and the likely effect of that conduct upon the continuation of the defendant's conditional liberty.

A defendant does, in many instances, receive adequate notice as required by N.C.G.S. § 15A-1345(e) in the event that a violation report includes nothing more than "a statement of the actions defendant allegedly took that constituted a violation of a condition of probation." Such a situation exists when the conduct alleged "could only point to a revocation-eligible violation." *State v. Moore*, ___ N.C. App. ___, ___,

---

[3] This interpretation is reinforced by the language in N.C.G.S. § 15A-1345(e) requiring that the probationer be notified of "the hearing and its purpose."

795 S.E.2d 598, 600 (2016).  For instance, in *State v. Lee*, the violation report alleged that the "defendant had violated four conditions of his probation," including "that he commit no criminal offense," 232 N.C. App. at 258, 753 S.E.2d at 722, and listed "several new pending charges which were specifically identified," *id.* at 259, 753 S.E.2d at 723.  I believe that the Court of Appeals correctly held in *Lee* that the notice provided to the defendant in that case sufficed for purposes of N.C.G.S. § 15A-1345(e) given that "[t]he violation report identified the criminal offense on which the trial court relied to revoke defendant's probation."[4]  *Id.* at 260, 753 S.E.2d at 724.  On the other hand, there are also occasions when a mere statement of the probationer's alleged conduct does not unambiguously "point to a revocation-eligible violation." *Moore*, ___ N.C. App. at ___, 795 S.E.2d at 600.  In *State v. Tindall*, for example, the violation report "indicat[ed] that defendant had violated her probation by using illegal drugs . . . and by failing to 'complete Crystal Lakes treatment program' as ordered."  227 N.C. App. at 184, 742 S.E.2d at 274.  Unlike the allegations contained in the violation report at issue in *Lee*, the facts alleged in the violation report at issue in *Tindall* sufficed to allege both a violation of the condition of probation that the probationer "[c]ommit no criminal offense in any jurisdiction," N.C.G.S. § 15A-1343(b)(1) (2013), and the condition that the probationer "[n]ot use, possess, or control

---

[4] I would, in fact, be inclined to uphold the sufficiency of the notice at issue in *State v. Lee* even if it had not referenced the condition of probation which the defendant was alleged to have violated given that the defendant's alleged conduct could only have been relevant to the "commit no criminal offense" condition of probation.

any illegal drug or controlled substance unless it has been prescribed for him or her by a licensed physician and is in the original container with the prescription number affixed on it," *id.* § 15A-1343(b)(15) (2013). Obviously, a violation of the condition of probation set out in N.C.G.S. § 15A-1343(b)(1) is "revocation-eligible" while a violation of the condition of probation set out in N.C.G.S. § 15A-1343(b)(15) is not. In light of that set of circumstances, I do not believe that the probationer in *Tindall* received an adequate "statement of the violations alleged" and conclude that the Court of Appeals did not err by finding the notice at issue in that case insufficient. *Tindall*, 227 N.C. App. at 187, 742 S.E.2d at 275.[5] As a result, while I share the Court's discomfort with some of the language that the Court of Appeals used in its opinions in these decisions and do not believe that they should be understood as holding that, in each and every case, a violation notice fails to support the revocation of a probationer's probation unless it specifically and explicitly alleges a violation of a "revocation-eligible" condition of probation, I do believe that each of these cases was correctly decided on the facts and cannot, for that reason, join the Court's decision to overrule them.

---

[5] The violation notice before the Court in *State v. Kornegay* was even less likely to give the probationer adequate notice than the violation notice at issue in *Tindall*, given that the trial court in *Kornegay* revoked the probationer's probation based upon a finding that the probationer had violated the conditions of probation set out in N.C.G.S. § 15A-1343(b)(1) despite the fact that the violation notice alleged, among other things, that the probationer had violated the condition that he " '[n]ot use, possess or control any illegal drug' " without making any reference to the "commit no criminal offense" condition. *Kornegay*, 228 N.C. App. at 321, 323, 745 S.E.2d at 881, 883.

Admittedly, the violation notice at issue in this case, unlike the violation notice at issue in *Lee*, does not make an explicit reference to an alleged violation of the condition of probation set out in N.C.G.S. § 15A-1343(b)(1). On the other hand, given the terms and conditions of defendant's probation, I am unable to understand, for the reasons stated by the Court, how the allegation that defendant had been charged with committing various criminal offenses could be understood as anything other than an allegation that he had violated the condition of probation that he "[c]ommit no criminal offense in any jurisdiction." N.C.G.S. § 15A-1343(b)(1). In fact, as I read the briefs and record before us in this case, defendant does not seem to have had any doubt that the proceeding held in the trial court was focused upon the issue of whether he had violated the condition of probation set out in N.C.G.S. § 15A-1343(b)(1). As a result, given that defendant had ample notice of the violation of the terms and conditions of probation that he was alleged to have committed and the effect of a determination that he had committed the alleged violation, I agree with both the Court and the majority in the Court of Appeals that the trial court's order revoking defendant's probation should be affirmed.

Justice HUDSON joins in this concurring opinion.


Justice BEASLEY dissenting.

The majority concludes that defendant had adequate notice of the alleged violations of probation, where the probation report contained a laundry list of "Other

Violation[s]" and failed to designate a statutory condition under N.C.G.S. §§ 15A-1343(b)(1), 15A-1343(b)(3a), or 15A-1344(d2). The majority further holds that a probation violation report need only describe behavior to provide sufficient notice. This holding does not comport with Fourteenth Amendment Due Process or the Justice Reinvestment Act's changes to North Carolina's probation system because it does not require proper notice to a defendant that her probation may be revoked. Therefore, I respectfully dissent.

Due process under the Federal Constitution and our state statute requires notice to the defendant of the alleged violations against her before a hearing on probation revocation may take place. *See Morrissey v. Brewer*, 408 U.S. 471, 486-87, 33 L. Ed. 2d 484, 497 (1972) ( "[T]he parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged."); *see also* N.C.G.S. § 15A-1345(e) (2015) ("The State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged."). In *Morrissey v Brewer*, two Iowa parolees had their parole revoked without the benefit of a hearing. 408 U.S. at 472-73, 33 L. Ed. 2d at 489-90. The United States Supreme Court held in *Morrissey* that when the State attempts to curtail a parolee's constitutionally protected liberty interest by revoking parole, due process mandates certain procedural safeguards. *See id.* at 481-82, 33 L. Ed. 2d at 495. Specifically, the Court said in *Morrissey* that

the liberty of a parolee, although indeterminate, includes many of the *core values of unqualified liberty and its termination inflicts a "grievous loss"* on the parolee and often on others. . . . By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Id.* at 482, 33 L. Ed. 2d at 495 (emphasis added).

While *Morrissey* addressed liberty interests of parolees facing parole revocation, in *Gagnon v. Scarpelli* the Court applied the same analysis to conclude that the liberty interests were synonymous for purposes of parole and probation, both requiring notice of the violations alleged against a defendant. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 786, 36 L. Ed. 2d 656, 664 (1973), *superseded by statute*, Parole Commission and Reorganization Act, Pub. L. No. 94-233, 90 Stat. 228 (1976). The Court in *Gagnon* clarified that probation revocation, like parole revocation "is not a stage of a criminal prosecution, but does result in a loss of liberty." *Id.* at 782, 36 L. Ed. 2d at 662. Because a probationer risks the loss of liberty, she is entitled to notice of the asserted violations in compliance with the due process requirements of the Fourteenth Amendment. *Id.* at 786, 36 L. Ed. 2d at 664.

The import of these cases is that the State must not only give the defendant written notice of the violation at issue but also provide a number of other due process protections, including:

(b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and

cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489, 33 L. Ed. 2d at 492. Importantly, *Morrissey* and *Gagnon* reject older concepts based on the tenet that because probation was only an "act of grace," a defendant had little recourse to contest the violations asserted against her. *See e.g., State v. Duncan*, 270 N.C. 241, 246, 154 S.E.2d 53, 57 (1967) ("[P]robation or suspension of sentence is an act of grace and not of right[.]"). Definitively, the right to due process during probation proceedings is derived from the Fourteenth Amendment's liberty interest protections, and therefore, the right to proper notice cannot be so lightly dismissed.

The Justice Reinvestment Act of 2011 (JRA), in implementing a plan for criminal justice reform, mirrored the Court's rationale in *Morrissey*, which emphasized the importance probation plays in rehabilitation and reduction in costs of incarceration. *See Morrissey*, 408 U.S. at 477, 33 L. Ed. 2d at 492. Part of the basis for the JRA was a report commissioned in 2009 by North Carolina state government officials. Council of State Gov'ts Justice Ctr., *Justice Reinvestment in North Carolina* 1 (Apr. 2011). The State asked the Council of State Governments Justice Center to provide data-driven analysis, that would produce recommendations for new policies designed to both improve public safety and reduce the costs of our corrections system.

*Id.* A key finding of the report was that "[p]robation revocations accounted for greater than 50 percent of admissions to prison in FY 2009," *id.* at 2, which led the Council to recommend three priorities: "strengthen probation supervision, hold offenders accountable in more meaningful ways, and reduce the risk of reoffending," *id.* at 1.

Researchers struck a balance among these three priorities by stressing the importance of holding offenders accountable, while encouraging completion of probation programs through community-driven approaches. *See id.* at 3. One of the Council's recommendations for holding offenders accountable, which is at issue in this case, was to limit revocation to those defendants who have committed a new criminal offense or absconded from supervision. *Id.* at 15. The JRA implemented this recommendation, among others, and codified the requirement that "[t]he court may only revoke probation for a violation of a condition of probation under G.S. 15A-1343(b)(1)[1] or G.S. 15A-1343(b)(3a),[2] except as provided in G.S. 15A-1344(d2).[3]

---

[1] "(b) Regular Conditions. — As regular conditions of probation, a defendant must: (1) Commit no criminal offense in any jurisdiction." N.C.G.S. § 15A-1343(b)(1) (2015).

[2] "(b) Regular Conditions. — As regular conditions of probation, a defendant must: . . . (3a) Not abscond by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer, if the defendant is placed on supervised probation." *Id.* § 15A-1343(b)(3a) (2015).

[3] "(d2) Confinement in Response to Violation. — When a defendant under supervision for a felony conviction has violated a condition of probation other than G.S. 15A-1343(b)(1) or G.S. 15A-1343(b)(3a), the court may impose a period of confinement of 90 consecutive days to be served in the custody of the Division of Adult Correction of the Department of Public Safety. The court may not revoke probation unless the defendant has previously received a total of two periods of confinement under this subsection. A defendant may receive only two periods of confinement under this subsection. The 90-day term of confinement ordered under this subsection for a felony shall not be reduced by credit for time already served in the case. Any such credit shall instead be applied to the suspended sentence. However, if the time

Imprisonment may be imposed pursuant to G.S. 15A-1344(d2) for a violation of a requirement other than G.S. 15A-1343(b)(1) or G.S. 15A-1343(b)(3a)." Justice Reinvestment Act of 2011, ch.192, sec. 4(b), 2011 N.C. Sess. Law 758, 767-68. Before the insertion of this language, any judge entitled to sit in the court that imposed probation could revoke it, with the exception of drug treatment probation[4] and unsupervised probation,[5] both of which had jurisdictional limits. *See id.*

The majority discusses the JRA's purpose, but fails to consider the changes it has made in North Carolina's probation procedures. While it is true that the JRA did not amend the specific provision relating to notice in N.C.G.S. § 15A-1345(e), the notice requirement cannot be read outside the context of the remainder of the statutory framework for probation created by the JRA. Currently, N.C.G.S. § 15A-1345(e) requires that

---

remaining on the maximum imposed sentence on a defendant under supervision for a felony conviction is 90 days or less, then the term of confinement is for the remaining period of the sentence. Confinement under this section shall be credited pursuant to G.S. 15-196.1." *Id.* § 15A-1344(d2) (2015).

[4] "(a1) Authority to Supervise Probation in Drug Treatment Court. — Jurisdiction to supervise, modify, and revoke probation imposed in cases in which the offender is required to participate in a drug treatment court or a therapeutic court is as provided in G.S. 7A-272(e) and G.S. 7A-271(f). Proceedings to modify or revoke probation in these cases must be held in the county in which the drug treatment court or therapeutic court is located." *Id.* § 15A-1344(a1) (2015).

[5] "(b) Limits on Jurisdiction to Alter or Revoke Unsupervised Probation. — If the sentencing judge has entered an order to limit jurisdiction to consider a sentence of unsupervised probation under G.S. 15A-1342(h), a sentence of unsupervised probation may be reduced, terminated, continued, extended, modified, or revoked only by the sentencing judge or, if the sentencing judge is no longer on the bench, by a presiding judge in the court where the defendant was sentenced." *Id.* § 15A-1344(b) (2015).

> [b]efore revoking or extending probation, the court must, unless the probationer waives the hearing, hold a hearing to determine whether to revoke or extend probation and must make findings to support the decision and a summary record of the proceedings. *The State must give the probationer notice of the hearing and its purpose, including a statement of the violations alleged.*

N.C.G.S. § 15A-1345(e) (emphasis added). However, as already explained, before the JRA was enacted a judge could revoke probation for virtually any violation, while after the JRA judges were limited to only three types of probation violations that could result in revocation (i.e., N.C.G.S. §§ 15A-1343(b)(1), 15A-1343(b)(3a), or 15A-1344(d2)).

Therefore, post JRA, probation violations can result in revocable *or* nonrevocable consequences to a defendant. For example, nonrevocable consequences could include probation modification under N.C.G.S. § 15A-1344(d), holding a defendant in contempt under N.C.G.S. § 15A-1344(e1), or ordering a period of confinement under N.C.G.S. § 15A-1343(a1)(3). Additionally, some conditions of probation may fall into *either* category of revocable and nonrevocable violations. An illustration can be found in *State v. Tindall*, in which the defendant had a substance abuse problem and was ordered to submit to substance abuse treatment. 227 N.C. App. 183, 184, 742 S.E.2d 272, 273 (2013). There "the violation reports alleged that defendant violated two conditions of her probation: to '[n]ot use, possess or control any illegal drug' and to 'participate in further evaluation, counseling, treatment or education programs recommended [ ] and comply with all further therapeutic

requirements.'" *Id.* at 186, 742 S.E.2d at 275. The Court of Appeals correctly found that this description of the defendant's behavior, while providing notice generally that the defendant's conduct violated her probation, was not enough to support revocation of probation. *Id.* at 187, 742 S.E.2d at 275. The mere allegation that the defendant possessed or used a controlled substance was insufficient to put the defendant on proper notice of a potential revocation because the behavior could constitute a revocable violation (due to the nature of the conduct as a criminal offense) but could also be a technical violation triggering one of a host of nonrevocable consequences. *See, e.g.*, *id.* at 187, 742 S.E.2d at 275; *see also* N.C.G.S. § 15A-1343(b)(15) (2015) (requiring as a regular condition of probation that a defendant "[n]ot use, possess, or control any illegal drug or controlled substance").

As defense counsel discussed at oral argument before this Court, the facts of this case provide another example in which allegations of behavior are insufficient to put a defendant on notice of the probation hearing's possible consequences. Here the probation officer's report included in the section labeled "Other Violation[s]" that defendant had the pending charge of "No Operators License," in violation of N.C.G.S. § 20-7(a) (2015) (requiring a license to operate a motor vehicle). However, operating a vehicle without a license can be either an infraction or a criminal misdemeanor. *See* N.C.G.S. § 20-35 (2015) (listing differing circumstances under which the offense of driving a motor vehicle without a driver's license is classified as a misdemeanor or an infraction). Therefore, the infraction relating to driving without an operator's

license might result only in a modification of probation because the court may impose additional requirements, such as the defendant surrendering her driver's license, or defendant's probation could be subject to revocation for committing a criminal offense. *Id.* § 15A-1343(b)(1). Thus, only stating the defendant's behavior in the notice, without more specificity, does not always notify the defendant of the class of the offense or if the court plans to modify or revoke her probation.

Similarly, in *State v. Cunningham*, the Court of Appeals found error when the defendant was given notice only of probation violations upon which the trial court did not rely in its decision to revoke the defendant's probation. 63 N.C. App. 470, 475, 305 S.E.2d 193, 196 (1983). The alleged violation was that the defendant created a noise disturbance by playing loud music during late night hours. *Id.* at 474, 305 S.E.2d at 196. But, the trial court found defendant in violation of probation not for the noise disturbance but for trespassing and destroying his neighbor's property, offenses that were not included in his probation violation report and for which he did not have notice. *Id.* at 475, 305 S.E.2d at 196. As the Court of Appeals in *Cunningham* correctly held, only the allegations contained in the violation report can serve as notice to a defendant of conditions for which the trial court can consider revocation. *Id.* at 475, 305 S.E.2d at 196.

The majority's effort to define the word "violation" by using its dictionary definition and its belief that a description of the defendant's behavior is all that is legally required completely fails to reflect the specificity required for proper notice.

Despite the majority's contention to the contrary, a statement describing "the specific behavior [d]efendant was alleged and found to have committed," *State v. Hubbard*, 198 N.C. App. 154, 159, 678 S.E.2d 390, 394 (2009), lacks the specificity sufficient to give notice to a defendant that her probation could be revoked at a hearing. Constitutionally and statutorily, notice requires a description of the violation alleged. *See Morrissey,* 408 U.S. at 486-87, 33 L. Ed. 2d at 497; *see also* N.C.G.S. § 15A-1345 (2015). Logically, to satisfy notice, the term "violation" also requires a specific description of the condition of probation violated (in this case N.C.G.S. § 15A-1343(b)(1)) and *not* simply a description of the behavior that constituted the violation. If the notice describes the defendant's behavior alone without reference to a probation condition violated, the defendant, before entering the hearing, would not know whether the State might seek to revoke her probation or impose some lesser consequence.[6] Describing only general types of behavior that may or may not fall under one of the three revocable conditions is insufficient because such an incomplete description permits the State to pick and choose when to proceed with revocation. Descriptions of general behavior only will cause a defendant to be ill-prepared for the hearing and do not "allow the defendant to prepare a defense and to protect the

---

[6] I also note that the majority's holding that a description of behavior alone is sufficient to provide notice goes far beyond the reasonable inference standard applied by the Court of Appeals below. Furthermore, the majority overrules a line of cases decided by the Court of Appeals that have correctly applied constitutional and statutory mandates since the passage of the JRA. *See generally*, *State v. Lee*, 232 N.C. App. 256, 753 S.E.2d 721 (2014); *State v. Kornegay*, 228 N.C. App. 320, 745 S.E.2d 880 (2013); *State v. Tindall*, 227 N.C. App. 183, 742 S.E.2d 272 (2013).

defendant from a second probation violation hearing for the same act." *Hubbard*, 198 N.C. App. at 158, 678 S.E.2d at 393 (citing *State v. Russell*, 282 N.C. 240, 243-44, 192 S.E.2d 294, 296 (1972)).

The Supreme Court of the United States has ruled that probation implicates "core values of unqualified liberty and its termination inflicts a 'grievous loss,' " and thus the State may not impinge upon that constitutionally protected liberty interest without appropriate process. *Morrissey*, 408 U.S. at 482, 33 L. Ed. 2d at 495. The majority ignores this mandate by failing to ensure that a defendant receives notice before her probation is revoked. Although I do not condone this defendant's alleged behavior,[7] the process required under the Fourteenth Amendment, for him as well as all other defendants is fundamental. As a result, I respectfully dissent.

---

[7] As the majority points out, defendant was also charged with first degree murder during the time defendant's hearing was continued.