IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-14

No. 180A20

Filed 11 February 2022

STATE OF NORTH CAROLINA

v.

JUSTIN BLAKE CROMPTON

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, *State v. Crompton*, 270 N.C. App. 439 (2020), affirming six judgments revoking defendant's probation entered on 25 October 2018 by Judge Marvin P. Pope Jr. in Superior Court, Buncombe County. Heard in the Supreme Court on 17 May 2021.

*Joshua H. Stein, Attorney General, by Brenda Eaddy, Special Deputy Attorney General, and Caden W. Hayes, Assistant Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Sterling Rozear, Assistant Appellate Defender, for defendant-appellant.*

MORGAN, Justice.

Defendant challenges the sufficiency of the allegations against him, contained in six probation violation reports, that he committed the revocable probation violation of absconding. Defendant also disputes the sufficiency of the State's factual basis for its absconding allegation, contending that even if the charge is taken as true, it cannot serve as the basis for a finding that defendant had in fact absconded. In this

case, we determine that the probation violation reports at issue effectively pleaded that defendant absconded probation and that the trial court did not abuse its discretion in revoking defendant's probation upon concluding that defendant had, in fact, absconded his probation. We therefore affirm the trial court's decision.

## I.  Background

Defendant pleaded guilty to one count each of felony breaking and entering, felony larceny after breaking and entering, felony breaking and entering a motor vehicle, felony altering the serial number of a firearm, and misdemeanor carrying a concealed gun, along with three counts of felony obtaining property by false pretenses, on 24 April 2017. The Superior Court, Buncombe County entered six consecutive judgments sentencing defendant to a minimum of 36 months and a maximum of 102 months of imprisonment, but suspended the activation of this sentence in favor of 36 months of supervised probation. Among the terms of defendant's probation were his requirements to (1) report regularly as instructed by the probation officer; (2) answer the reasonable inquiries of the officer; (3) report and obtain approval for any change in address; (4) report and obtain approval before leaving the jurisdiction of the trial court; (5) abstain from using drugs; and (6) "not abscond, by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer."

Defendant soon began to violate the terms of his probation, resulting in his

supervising probation officer issuing violation reports on each of defendant's cases two months later on 28 June 2017. The probation violation reports alleged that defendant missed curfew on several dates, left the jurisdiction of the trial court without permission on multiple dates, and admitted to the usage of marijuana while on probation. The violation reports were called for consideration by the trial court on 7 September 2017; defendant admitted that he violated the conditions of his probation as alleged. The trial court found defendant to be in willful violation of his probation and ordered him to serve a 90-day term of confinement with the North Carolina Division of Adult Correction and to complete 90 days of house arrest upon release from his prison confinement.

¶ 4        Defendant tested positive for marijuana again in April of 2018, after completing his period of confinement and subsequent house arrest as the consequences for the probation violations which he admitted on 7 September 2017. On 14 May 2018, which was the day that defendant was scheduled to report to the probation office for an appointment, defendant called his supervising probation officer Jamie Harris by telephone and left a voicemail message that defendant would be unable to keep the day's appointment due to an altercation which occurred on the previous night between defendant and defendant's brother with whom the probationer lived. Officer Harris returned defendant's telephone call and left a voicemail message instructing defendant to provide updated information concerning

defendant's residential situation and to report to the probation office on 16 May 2018. Contrary to Officer Harris' directive, defendant did not contact the probation officer again. Defendant's whereabouts were unknown to the State until defendant's arrest almost three months later on 8 August 2018.

¶ 5 Officer Harris conducted an absconding investigation in which the probation officer visited defendant's last known address on two occasions, called all of the references and telephone contact numbers that defendant had provided during defendant's term of probation, called the local hospital by telephone to determine if defendant had been admitted, reviewed law enforcement databases to ensure that defendant was not in custody, and called a vocational rehabilitation program in which defendant was enrolled in order to determine if the program providers had any knowledge of defendant's whereabouts. Having exhausted all available avenues of contacting defendant, and being cognizant of defendant's earlier probation violation which Officer Harris considered to have put defendant on notice of "the ramifications of absconding," on 23 May 2018 defendant's probation officer issued another probation violation report and accompanying order for arrest in each of defendant's cases. The probation violation report in each case alleged that defendant had willfully violated the following conditions of probation:

> 1. Regular Condition of Probation: General Statute 15A-1343(b)(3a) "Not to abscond, by willfully avoiding supervision or willfully making the supervisee's whereabouts unknown to the supervising probation officer"

in that, THE DEFENDANT HAS FAILED TO REPORT[] AS DIRECTED BY THE OFFICER, HAS FAILED TO RETURN THE OFFICER[']S PHONE CALLS, AND HAS FAILED TO PROVIDE THE OFFICER WITH A CER[T]IFIABLE ADDRESS. THE DEFENDANT HAS FAILED TO MAKE HIMSELF AVAILABLE FOR SUPERVISION AS DIRECTED BY HIS OFFICER, THEREBY ABSCONDING SUPERVISION. THE OFFICER[']S LAST FACE TO FACE CONTACT WITH THE OFFENDER WAS DURING A HOME CONTACT ON 4/16/18.

2. Condition of Probation "Not use, possess or control any illegal drug or controlled substance unless it has been prescribed for the defendant by a licensed physician and is in the original container with the prescription number affixed on it . . ." in that THE DEFENDANT TESTED POSITIVE FOR MARIJUANA ON 4/16/18.

3. "Report as directed by the Court, Commission or the supervising officer to the officer at reasonable times and places . . ." in that THE DEFENDANT FAILED TO REPORT AS DIRECTED ON 5/14/18, 5/16/18, AND 5/23/18.

4. Condition of Probation "The defendant shall pay to the Clerk of Superior Court the "Total Amount Due" as directed by the Court or probation officer" in that THE DEFENDANT HAS FAILED TO MAKE ANY PAYMENTS TOWARD HIS COURT INDEBTEDNESS AND RESTITUTION.[1]

¶ 6    Defendant was arrested on 8 August 2018 and his alleged probation violations came on for hearing on 25 October 2018. At the hearing, Officer Harris provided the

---

[1] While five of defendant's cases of probation had associated court-ordered fees and restitution, defendant's sixth case, which concerned his conviction for felony larceny after breaking and entering, did not have associated fees or restitution; therefore, the corresponding violation report omitted allegation #4.

trial court with a synopsis of the investigation which he conducted, along with a factual basis for the non-absconding alleged probation violations listed on the violation reports. Defendant admitted his commission of all of the alleged probation violations as detailed—including the allegation of absconding supervision—and represented that he had turned himself in for the purposes of arrest and for "the sake of . . . his family." Defendant offered these explanations to the trial court in an effort to persuade the trial court to allow defendant to serve his underlying sentences concurrently, rather than consecutively as the initial sentencing trial court had ordered. In accepting defendant's admission to a revocable probation violation, the trial court revoked defendant's probation, denied defendant's request that his sentences be served concurrently, and activated defendant's sentences as originally determined. Defendant verbally noticed his appeal.

¶ 7     The Court of Appeals issued a divided opinion in which the majority held that the State had met its burden of proof to show that defendant willfully violated a revocable condition of probation and that the trial court's revocation of defendant's probation was not an abuse of discretion. *State v. Crompton*, 270 N.C. App. 439, 448–49 (2020). The dissenting opinion considered the absconding allegation in the probation violation reports to allege only violations of regular conditions of probation found in N.C.G.S. § 15A-1343(b)(3), and therefore the absconding allegation itself was insufficient here to allege a revocable condition of probation under N.C.G.S. § 15A-

1343(b)(3a), pursuant to the Court of Appeals decision in *State v. Williams*, 243 N.C. App. 198, 199–200 (2015). *Crompton,* 270 N.C. App. at 454–55 (McGee, C.J. dissenting). Even assuming that the alleged facts contained within the claimed absconding violation were not limited to violations of N.C.G.S. § 15A-1343(b)(3), the dissent deemed that the allegations "taken together[ ] still do not establish a violation of N.C.G.S. § 15A-1343(b)(3a)[ ] because they do not adequately allege willfulness by [d]efendant" as required by the Court of Appeals opinion in *State v. Melton*, 258 N.C. App. 134, 139 (2018). *Id.* at 455. The dissent reasoned that, although defendant admitted to the absconding violation as alleged and Officer Harris testified to exhausting all methods of contact with defendant, nonetheless the allegations in the probation violation report failed to charge that defendant actually knew that his supervising officer was trying to contact him. *Id.* Consequently, the dissenting view would have decided that "the State's evidence was insufficient to support a finding of absconding." *Id.* at 457. Defendant appealed to this Court as a matter of right based upon the issues raised in the dissent.

## II. Analysis

¶ 8     The trial court's decision to revoke a defendant's term of probation pursuant to a valid probation violation report is reviewed for abuse of discretion on appeal. *State v. Murchison*, 367 N.C. 461, 464 (2014).

¶ 9     Defendant argues that the absconding allegation contained within each of the

probation violation reports was "merely an assertion that [defendant] failed to report, failed to return phone calls, and failed to provide a certifiable address," which merely amount to violations of the regular conditions of probation codified in N.C.G.S. § 15A-1343(b)(3) (2019). According to defendant's construction of *Williams*, *Melton*, and *State v. Krider*, 258 N.C. App. 111, *aff'd per curiam in part, disavowed per curiam in part*, 371 N.C. 466 (2018)[2], these allegations fail as a matter of law to allege a revocable probation violation. Defendant also argues that "[c]onsidering N.C.G.S. § 15A-1343 as a whole and construing its various subsections *in pari materia*, it is clear the legislature intended 'absconding' to have a unique, limited, and heightened meaning – separate and apart from violations of other conditions of probation."

¶ 10    First, this Court must determine whether the probation violation reports sufficiently alleged that defendant absconded supervision. Our analysis is guided by

---

[2] Our per curiam affirmance of *Krider* is inapplicable to the case at bar. In *Krider*, the defendant denied absconding probation and testified at the probation violation hearing about his attempts to contact his supervising officer "plenty of times" during the time period in which the probation officer accused the defendant of absconding. The supervising officer testified that the defendant maintained regular contact with the officer following the defendant's arrest for absconding, during which time the defendant made progress on several conditions of his probation. *Krider*, 258 N.C. App. at 112, 116–17. In vacating the trial court's orders in *Krider* revoking the defendant's probation, the Court of Appeals' reasoning—which we endorsed—was predicated on the conclusion that "the State's *evidence* was insufficient to support [the] allegation" of absconding. *Id.* at 118. However, at issue in the present case is the sufficiency of the probation violation report's allegation of the revocable offense of absconding. In addition to this essential distinction between the current case and *Krider*, defendant here admitted the absconding allegation, and the State therefore was under no burden of production of evidence where defendant waived formal reading of the violation report and a formal hearing.

our discussion in *State v. Moore*, 370 N.C. 338 (2017), in which this Court addressed whether a probation violation report sufficiently alleged that the defendant had committed the revocable violation of committing a new criminal offense while on probation as prohibited by N.C.G.S. § 15A-1343(b)(1). The defendant in *Moore* had been placed on probation for the commission of two different sets of identical criminal offenses which he perpetrated in two consecutive months. *Moore*, 370 N.C. at 338–39. The judgments in that defendant's cases contained many of the "regular conditions of probation" found in N.C.G.S. § 15A-1343(b) and included the condition that defendant must "commit no criminal offense in any jurisdiction." *Id*. at 339. Subsequently, the State filed two probation violation reports—one for each of the crimes which caused the defendant to be placed on probation—with each of the probation violation reports alleging violations of the monetary conditions of probation and the following "Other Violation":

> The defendant has the following pending charges in Orange County. 15CR 051315 No Operators License 6/8/15, 15CR 51309 Flee/Elude Arrest w/MV 6/8/15. 13CR 709525 No Operators License 6/15/15, 14CR 052225 Possess Drug Paraphernalia 6/16/15, 14CR 052224 Resisting Public Officer 6/16/15, 14CR 706236 No Motorcycle Endorsement 6/29/15, 14CR 706235 Cover Reg Sticker/Plate 6/29/15, and 14CR 706234 Reg Card Address Change Violation.

*Id*.

At the probation violation hearing, the defendant Moore's probation officer testified about the probationer's alleged criminal offenses that were identified in each

of the probation violation reports. *Id.* at 339–40. Additionally, two law enforcement officers offered testimony about the defendant's alleged commission of one of the identified offenses among those listed in the probation violation reports; namely, fleeing to elude arrest. *Id.* at 340. The trial court found that the defendant had violated the condition of his probation to "commit no criminal offense." Based upon the defendant's commission of this revocable violation, the trial court revoked his probation and activated both original suspended sentences. *Id.*

¶ 12      Just like defendant in the instant case, the defendant in *Moore* contended on appeal that "the probation violation reports did not give him adequate notice because they did not specifically state the condition of probation that he allegedly violated." Here, defendant claims that there was not sufficient notice of an absconding allegation which was "separate and apart from violations of other conditions of probation"; in *Moore*, the defendant contended that "because the probation violation reports did not specifically list the 'commit no criminal offense' condition as the condition violated, the reports did not provide the notice . . . require[d]." *Id.* In upholding the trial court's revocation of the defendant's probation in *Moore*, we explained that

> "a statement of the violations alleged" refers to a statement of what a probationer *did* to violate his conditions of probation. It does not require a statement of the underlying conditions that were violated . . . [N.C.G.S. § 15A-1345(e)] requires only a statement of the actions that violated the conditions, not of the conditions that those actions violated.

*Id.* at 341.

The absconding allegation in the case at bar satisfies the notice requirement for probation violation reports established in *Moore*. Each report alleged that defendant willfully (1) failed to report to the office as directed by his supervising officer, (2) failed to return his supervising officer's telephone calls, (3) failed to provide a certifiable address, and (4) generally failed to make himself available for supervision as directed by his officer. The absconding allegation in each violation report provided further notice to defendant of the details of the charge by specifying the time period of defendant's alleged conduct by alerting him and the trial court that defendant was last seen in person on 16 April 2018, and therefore he could not be held accountable for absconding prior to that date. Defendant's admission to all of the probation violations as alleged connotes the effectiveness of the sufficiency of the notice to defendant. More specifically, defendant's admission that he willfully failed to make himself available for supervision demonstrates that defendant absconded "by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising officer." N.C.G.S. § 15A-1343(b)(3a).

Defendant's argument that his failures to report to his probation officer as directed, to return his probation officer's telephone calls, and to provide a legitimate address could not independently serve as the bases for both violating the regular conditions of probation as codified in N.C.G.S. § 15A-1343(b)(3) and the revocable

violation of absconding supervision is meritless. As the Court of Appeals majority

reasoned in its opinion, such an interpretation as submitted by defendant

> would also operate to eliminate absconding as a ground for
> probation revocation. As a practical matter, those
> conditions laid out in Section 15A-1343(b)(3) make up the
> necessary elements of "avoiding supervision" or "making
> [one's] whereabouts unknown." A defendant cannot avoid
> supervision without failing to report as directed to his
> probation officer at reasonable times and places. Neither
> can a defendant make his whereabouts unknown without
> failing to answer reasonable inquiries or notify his
> probation officer of a change of address.

*Crompton*, 270 N.C. App. at 446. This Court is constrained from interpreting N.C.G.S.

§ 15A-1343(b)(3a) to reach such an absurd result. *State v. Beck*, 359 N.C. 611, 614–

15 (2005) (rejecting a criminal defendant's interpretation of a statute that "could lead

to absurd results.").

¶ 15      In applying the principles espoused and established in *Moore* to the present

case, there was no abuse of discretion committed by the trial court in its decision to

revoke defendant's probation and to activate his suspended sentences upon

defendant's admission of his commission of the revocable violation of absconding

probation. Sufficient notice of the absconding allegations was provided to defendant

in the probation violation reports; the fact that defendant's alleged violations of

"regular conditions of probation" likewise served to constitute grounds for his

commission of the expressly alleged probation violation of absconding did not prevent

these violations from operating in such a dual capacity. Similarly, the State's factual

basis for its absconding allegation constituted sufficient notice to defendant of the basis for the State's claim of a revocable violation of probation. Defendant's admission of the probation violations as alleged, including the absconding allegation, confirms the effectiveness of the notice which informed defendant of the individual absconding allegation. Defendant's knowledge of the individual allegation of absconding through the notice provided to him in the probation violation reports is buttressed by his awareness of the trial court's ability to activate his suspended sentences upon defendant's admission to absconding, as defendant capably addressed the trial court in an unsuccessful effort to convert his multiple terms of incarceration to concurrent sentences rather than consecutive sentences. In compliance with this Court's determinations in *Moore*, defendant here was sufficiently and properly informed by the probation violation reports of his alleged violations and his alleged conduct which constituted the alleged violations, including the alleged absconding behavior which defendant admitted.

## III.    Conclusion

¶ 16      The trial court did not abuse its discretion in revoking defendant's probation. The Court of Appeals opinion upholding the trial court's judgments is affirmed.

AFFIRMED.

Justice BERGER did not participate in the consideration or decision of this case.

Justice EARLS dissenting.

In 2011, the General Assembly passed the Justice Reinvestment Act (JRA) as "part of a national criminal justice reform effort" the purpose of which was to reduce corrections spending and reinvest the savings in strategies that reduce recidivism and improve public safety. *State v. Johnson*, 246 N.C. App. 139, 143 (2016) (quoting Jeff Welty, *Overcriminalization in North Carolina*, 92 N.C. L. Rev. 1935, 1947 (2014)). Among other changes, the JRA "made it more difficult to revoke offenders' probation and send them to prison." *Id.* The General Assembly was seeking to address a significant problem: "Before the JRA was enacted, over half of the individuals entering North Carolina prisons were doing so because of violations of conditions of probation." *State v. Moore*, 370 N.C. 338, 344 (2017) (citing James M. Markham, *The North Carolina Justice Reinvestment Act* 1 (2012)).

With today's decision, the Court potentially takes an unwarranted step toward rolling back a critical part of those reforms. By failing to sharply distinguish between "absconding," which permits a trial court to immediately revoke a defendant's probation, and other probation violations, which do not, the majority's opinion in this case could be seen to be changing the law to permit the revocation of probation for failing to report, failing to answer a probation officer's phone calls, and failing to notify a probation officer of a change in address. I am sure that is not the course this Court intends to take. I dissent from the application of the JRA in this case and write

separately to observe that prior precedents enforcing the distinction embodied in the JRA between failing to report and willfully absconding remain good law.

¶ 19      The defendant, Justin Blake Crompton, pleaded guilty to breaking and/or entering, larceny after breaking and/or entering, three counts of obtaining property by false pretenses, breaking or entering a motor vehicle, possessing a firearm with an altered or removed serial number, and carrying a concealed gun on 24 April 2017. The trial court imposed six consecutive sentences of 6 to 17 months' imprisonment, each of which was suspended and subject to a 36-month period of supervised probation. Following probation violations in May and June of 2017, Mr. Crompton was ordered to complete a 90-day period of confinement in response to violation (CRV) pursuant to N.C.G.S. § 15A-1344(d2), followed by a 90-day period of house arrest.

¶ 20      Approximately a year into his probation, on 14 May 2018, Mr. Crompton called his probation officer. Mr. Crompton told his probation officer that he had gotten into a fight with his brother and would not be able to attend his appointment that day. The officer called back and left a message, saying "let me know what you work out for housing and report two days later." The probation officer did not hear back from Mr. Crompton and initiated an absconding investigation.[1]

---

[1] The majority details the extent of the investigation as support for its conclusion that the trial court did not err in determining that Mr. Crompton had, in fact, absconded within the meaning of the statute. However, in the instant case the relevant question is not the extent of the investigation conducted by the probation officer—it is what the defendant did. By focusing on the extent of the investigation, the majority suggests that we can infer that a

¶ 21  On 23 May 2018, the probation officer filed violation reports against Mr. Crompton. The reports alleged that Mr. Crompton had absconded supervision, used a controlled substance, failed to report to his probation officer, and failed to make mandatory payments. The factual allegations in the reports that supported the allegation of absconding were that Mr. Crompton had "failed to report[ ] as directed by the officer," "failed to provide the officer with a cer[t]ifiable address," "failed to make himself available for supervision as directed by his officer," and that "the officer[']s last face to face contact with [Mr. Crompton] was during a home contact on 4/16/18." At a hearing on 22 October 2018, Mr. Crompton admitted the violations. The trial court found that Mr. Crompton "willfully and intentionally violated the terms and conditions of the probationary sentencing by absconding" and activated his sentences.

¶ 22  The majority holds that the trial court did not err in finding that Mr. Crompton had absconded and activating Mr. Crompton's sentences. However, doing so based on the factual allegations in the probation violation report is, at best, inferring evidence of willfulness that is not in the report itself.

¶ 23  There are two categories of probation violations relevant to the instant case. In the first category, consisting of most probation violations, "[t]he court may not

defendant absconded in violation of N.C.G.S. § 15A-1343(b)(3a) because a probation officer conducted a thorough investigation. However, neither the existence nor the quality of an investigation is evidence of guilt.

revoke probation unless the defendant has previously received a total of two periods of confinement under this subsection. [CRVs]." N.C.G.S. § 15A-1344(d2) (2019). However, if a defendant commits a criminal offense or absconds from supervision while on probation, the two probation violations which are in the second category, then the court may revoke probation regardless of whether the defendant has received two CRVs. N.C.G.S. § 15A-1344(a); *see also State v. Moore*, 370 N.C. 338, 344 (2017) ("The changes to the law that the JRA effected were consistent with these concerns because subsection 15A-1344(a), as amended by the JRA, now makes only committing a new criminal offense or absconding revocation-eligible unless a defendant has already served two periods of confinement for violating other conditions of probation.").

¶ 24         The violation reports filed by Mr. Crompton's probation officer only allege, and Mr. Crompton therefore only admitted to, conduct which amounts to violations of Section 15A-1343(b)(3)—a violation in the first category, for which a court "may not revoke probation unless the defendant has previously received" two CRVs. N.C.G.S. § 15A-1344(d2); *see also* N.C.G.S. § 15A-1344(a) ("The Court may only revoke probation for a violation of a condition of probation under [N.C.]G.S. 15A-1343(b)(1) or [N.C.]G.S. 15A-1343(b)(3a), except as provided in [N.C.]G.S. 15A-1344(d2)."). The violation reports alleged that Mr. Crompton "failed to report[ ] as directed by the officer." However, this is a violation of Section 15A-1343(b)(3), which requires that a

defendant "[r]eport as directed by the court or his probation officer." The violation

reports also allege that Mr. Crompton "failed to return the officer['s] phone calls,"

which is a violation of the requirement in Section 15A-1343(b)(3) that a defendant

"answer all reasonable inquiries by the officer." The violation reports further allege

that Mr. Crompton "failed to provide the officer with a [certifiable] address."[2] This is

a violation only of Section 15A-1343(b)(3)'s directive that a defendant must "obtain

prior approval from the officer for, and notify the officer of, any change in address."

¶ 25        While the facts alleged are violations of Subsection 15A-1343(b)(3), they are

alleged    as    violations    of    Subsection    15A-1343(b)(3a),    absconding.    This

misapprehension of the statutory provisions does not, however, somehow transform

Mr. Crompton's conduct into absconding. *See, e.g., State v. Williams,* 243 N.C. App.

198, 205 (2015) ("Although the report alleged that Defendant's actions constituted

'abscond[ing] supervision,' this wording cannot convert violations of [N.C.G.S.] §§

15A-1343(b)(2) and (3) into a violation of [N.C.G.S.] § 15A-1343(b)(3a)."). The majority

notes that Mr. Crompton relies on *Williams,* but the majority does not distinguish

that case or explain why its holding is wrong. In fact, *Williams* has been followed at

least seven other times on this same point.  *See State v. McAbee*, No. COA18-25, 2018

---

[2] The violation reports also state that "[t]he defendant has failed to make himself
available for supervision as directed by his officer, thereby absconding supervision. The
officer's last face to face contact with the offender was during a home contact on 4/16/18." A
review of the hearing transcript reveals no facts other than those listed above on which these
statements might be based, suggesting that they are merely a summary of the facts above.

WL 6613936 (N.C. Ct. App. Dec. 18, 2018) (unpublished) (holding the evidence did

not support a conclusion defendant absconded where violations of regular conditions

of probation did not authorize revocation based upon violations of those conditions);

*State v. Melton,* 258 N.C. App. 134 (2018) (emphasizing that there was insufficient

evidence that defendant willfully refused to make herself available for supervision

merely because she failed to attend scheduled meetings and the probation officer was

unable to reach defendant after two days of attempts); *State v. Krider*, 258 N.C. App.

111 (2018) (reasoning that the State's allegations and supporting evidence were very

similar to those rejected in *Williams* because defendant's actions only amounted to a

violation of N.C.G.S. § 15A-1343(b)(3) and did not rise to the distinct violation of

absconding supervision); *State v. Booker*, No. COA 16-1142, 2017 WL 3863881 (N.C.

Ct. App. Sept. 5, 2017) (holding that defendant's actions, without more, did not violate

N.C.G.S. § 15A–1343(b)(3a) when those actions violated the explicit language of "a

wholly separate" regular condition of probation which did not allow probation

revocation and activation of a suspended sentence); *State v. Batiste*, No. COA16-1186,

2017 WL 3863538 (N.C. Ct. App. Sept. 5, 2017) (concluding that because defendant's

alleged violations of probation could not be meaningfully distinguished from those at

issue in *Williams*, the evidence failed to support the trial court's conclusion that

defendant willfully absconded from supervision); *State v. Brown*, No. COA 15-847,

2016 WL 4608187 (N.C. Ct. App. Sept. 6, 2016) (holding that the trial court was not

authorized to revoke defendant's probation based on allegations in the violation report which were virtually identical to those in the *Williams* report; allegations tracked the language of N.C.G.S. § 15A-1343(b)(2) and (b)(3) but not statutory absconding); *State v. Johnson*, 246 N.C. App. 139 (2016) (relying on its interpretation of *Williams* and *Tindall*, the court held that defendant's actions without more could not serve as a basis to revoke defendant's probation).

¶ 26 The only possible conclusion from the majority's silence on this point is that these cases remain good law. A defendant absconds by "willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer, if the defendant is placed on supervised probation." N.C.G.S. § 15A-1343(b)(3a). Because a violation of this provision permits the revocation of probation while a violation of Subsection 1343(b)(3) does not, *see* N.C.G.S. § 15A-1344(a), logically, it must be true that absconding is something different than a violation of Subsection 1343(b)(3)—it cannot be true that the same conduct both prohibits a trial court from revoking probation and permits the trial court to revoke probation.

¶ 27 The majority errs by concluding in this case that the alleged conduct will support a finding that Mr. Crompton has absconded. Allowing actions which explicitly violate a regular condition of probation other than those found in N.C.G.S. § 15A-1343(b)(3a) to also serve, without the State showing more, as a violation of that very same provision, renders portions of the statutory language in § 15A-1343 superfluous.

The General Assembly did not intend for a violation of a condition of probation other than absconding to result in revocation. The probation violation report's use of the term "absconding" to describe Mr. Crompton's noncompliance with the regular condition of probation under § 15A-1343(b)(3) has the effect of overstepping the trial court's limited revocation authority under the JRA, which does not include this condition.

¶ 28        The majority's logic is that if the allegations in this case do not suffice to establish absconding, then no allegations could achieve that end because such conduct is the only possible way to prove a defendant absconded within the meaning of the statute. However, the distinction between failing to report and willfully avoiding supervision gives legal significance to the differences between negligence and intent; accident and willfulness. These are common distinctions throughout civil and criminal law. And in this context, other cases provide clear examples of allegations that are sufficient to show willful avoidance of supervision. *See, e.g., State v. West,* No. COA18-242, 2019 WL 190239 (N.C. Ct. App. Jan 15, 2019) (unpublished). In *West,* the probation violation report alleged that, among other things, defendant was aware his probation officer was looking for him, demonstrably lied about whether he had transportation, and was instructed by his probation officer to remain at his house until she could arrive. Instead, defendant disregarded that instruction and the urging of his family by leaving before his probation officer got to his home. The trial

court correctly concluded that "the violation reports filed by [the probation officer] expressly alleged willful conduct distinct from Defendant's mere failure to report." *Id* at *4.

¶ 29        In contrast, there are no allegations in this case that Mr. Crompton willfully avoided supervision, only that he failed to call, he failed to provide an address, he failed to report, and he failed to make mandatory payments. Following established and well-reasoned precedent from the Court of Appeals on this point, and understanding the logic of the statutory structure, I would conclude that these allegations are not sufficient to establish willful absconding.

¶ 30        "The JRA's purpose was 'to reduce prison populations and spending on corrections and then to reinvest the savings in community-based programs.' "*Moore*, 370 N.C. at 343 (quoting James M. Markham, *The North Carolina Justice Reinvestment Act* 1 (2012)). It accomplished this objective by restricting the situations for which a defendant's probation could be revoked to those wherein a defendant has committed a new criminal offense, absconded supervision, or already served two CRVs for other probation violations. *Id.* at 344; *see also* N.C.G.S. § 15A-1344(a). The General Assembly has defined absconding to mean "willfully avoiding supervision" or "willfully making the defendant's whereabouts unknown to the supervising probation officer," N.C.G.S. § 15A-1343(b)(3a), and it separated that violation from other probation violations. N.C.G.S. § 15A-1344(a).  The allegations in this case did not

sufficiently allege willfulness and therefore, I dissent.